UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:08CV258

MATTIE M. NEWTON                                                    PLAINTIFF

VS.

MICHAEL J. ASTRUE,
       Commissioner of Social Security                                       DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Mattie Newton ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be affirmed.

## PROCEDURAL HISTORY

On January 6, 2003, Claimant filed application for supplemental security income payments, alleging that she became disabled as of December 1, 1996. After a hearing, Administrative Law Judge Peter M. Davenport determined that her hypertension only mildly diminished her functional abilities, but that her borderline intellectual functioning was a severe impairment in that it limited her ability to perform basic work activities. The ALJ further found that she had no past relevant work, but that she retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy. The Appeals Council denied review.

On appeal to this Court, the Commissioner requested remand for clarification of mental

work-related limitations. Absent objection by plaintiff, the Court remanded the matter. Following an additional hearing, Administrative Law Judge Ronald M. Kayser ("ALJ") determined that plaintiff's low borderline intellectual functioning was a severe impairment, but that she had the residual functional capacity for a significant number of jobs.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

## ARGUMENTS ON THIS APPEAL

Plaintiff's first argument is that the ALJ erred in adopting the testimony of a medical advisor instead of making a Step 3 determination based on the IQ test scores contained in the record. At Step three of the sequential evaluation process, the inquiry is whether the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"). If the plaintiff carries the burden of establishing that s/he meets a Listing, the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991), Burress v. Secretary, 835 F.2d 139 (6th Cir. 1987). Listings are to be interpreted very strictly, and the plaintiff must

establish the existence of all elements of the Listing. <u>Foster v. Halter</u>, 279 F.3d 348 (6th Cir. 2001), <u>Hale v. Secretary</u>, 816 F.2d 1078 (6th Cir. 1987), <u>Dorton v. Heckler</u>, 789 F.2d 363, 367 (6th Cir. 1986). To meet a listing, a claimant must present specific *medical evidence* to satisfy all of the Listing criteria. 20 C.F.R. Sec. 416.925. That is, at Step Three, it is insufficient to point to the existence of an impairment and use various types of evidence to argue that the functional restrictions imposed by that impairment are disabling; rather, the plaintiff must point to medical evidence establishing *all* of the criteria set out in the listing. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990). The plaintiff cannot show that s/he "equals" a Listing simply by showing overall functional impact of his condition; "equivalence" is a test used only when the claimant's impairment is unlisted, and it is satisfied only by presenting medical evidence of findings "equal in severity to *all* the criteria for the one most similar impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990).

In this case, the Listing at issue is 12.05, which requires a showing of an IQ score between 60 and 70, plus at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and repeated episodes of decompensation (of extended duration). Plaintiff pointed to IQ scores in the upper 50s, lower 60s, but Dr. Dennis, who administered the 2003 test, declined to declare the scores *valid*, noting ""results should be interpreted with caution since Mrs. Newton resists guessing and lacks persistence in attempting tasks." Tr. 181. With respect to the second requirement, i.e., a showing of impairment of functioning, plaintiff failed to present any medical evidence supporting the existence of at least two of the items from the four listed. The Court finds no error in the ALJ's Step 3 evaluation.

Neither does the Court find legal error or failure of proof regarding the Step 4 evaluation and assessment of Ms. Newton's functional capacity. Residual functional capacity is an assessment of the claimant's remaining capacity for work once her limitations have been taken into account, Howard v. Commissioner, 276 F.3d 235, 239 (6th Cir. 2002); 20 C.F.R. §404.1545(a)(1). Residual functional capacity is what a claimant can still do on a sustained, regular, and continuing basis, Cohen v. Secretary of HHS, 964 F.2d 524 (1992). A claimant bears the burden or proof in establishing her RFC, Her v. Commissioner, 203 F.3d 388, 391-392 (6th Cir. 1999).

The ALJ acknowledged the IQ scores obtained in 2003 and in 2006. Tr. 276. However, the ALJ also noted Dr. McKeown's testimony indicating that the adaptive living skills reported by Ms. Newton were inconsistent with such low scores. Dr. McKeown observed that Ms. Newton had rather poor performance in school, "but nothing ... indicates that she was ever evaluated for ability at that time." Tr. 357. Records indicate she can read and write, that she has a driver's license and that she drives, that she is able to manage a home and family of four, and that she plays Rummy. According to Dr. McKeown, all of these items are inconsistent with a significant level of retardation. Tr. 276-377.

In addition, Ms. Newton testified regarding money management ability at odds with her scores. Although Dr. Dennis stated that Ms. Newton "is not capable of managing benefits" received in her own name (Tr. 184), her own testimony belies this, indicating instead that she manages the household finances and keeps records of expenditures for Social Security purposes. Tr. 324-325, 329-331. The Court concludes that there is substantial evidence in the record to support the ALJ's determination that Ms. Newton's functional ability is more accurately described as reflecting "borderline intellectual functioning" rather than "mental retardation," and to support the ALJ's

4

determination regarding residual functional capacity.

An order in conformity has this day entered.